GRISWOLD, respondent, *v.* BOLEY et al., appellants.

PRACTICE — *statement on motion for new trial — particular errors.* Under section 195 of the Civil Practice Act, the statement on the motion for a new trial must specify the particulars in which the evidence is insufficient, and a specification that "the evidence in this case does not justify the verdict," is too general and uncertain and will not be reviewed by this court.

PRACTICE ON APPEAL — *presumption — new trial — notice — specifications.* In the absence of any objection this court will presume that a notice of the motion for a new trial was given, although it does not appear in the record, and that the specifications of this notice are contained in the motion for a new trial.

PRACTICE — *statement — motion for new trial.* The specifications of error form a part of the statement, but they are separate and distinct from the motion for a new trial.

PRACTICE — *consideration of exceptions.* This court will not consider exceptions that were not taken at the proper time and duly served.

PRACTICE — *exceptions — instructions.* Exceptions to the charge of the court must be made to a specified portion thereof, before the case is finally submitted to the jury.

PRACTICE — *verdict — conflicting evidence — prejudice.* A verdict will not be disturbed that is fairly sustained by any testimony, although the weight of evidence is against it, unless it appears to be the result of passion, prejudice or fraud.

PRACTICE — *exceptions to proof.* Objections to the proof of special damages cannot be made in this court for the first time, if no exceptions were taken to the same at the trial in the court below.

MARRIED WOMEN — *record of separate property.* A married woman, who records with the register of deeds of the county in which she resides, a bill of sale of personal property and also a list of such property and its increase, complies with the statute exempting " the property of married women from execution in certain cases," and thereby notifies the world that the same is her property.

MARRIED WOMEN — *property — husband — creditors.* A married woman, who has duly recorded her property, can make her husband her agent and give him the control and possession of the same without affecting her rights, or rendering the property liable for the debts of her husband.

EVIDENCE — *general reputation of ownership — fraud.* Evidence of general reputation in the neighborhood, concerning the ownership of certain cattle by a married woman, is competent to rebut the allegation that she had conspired to deceive and defraud the creditors of her husband.

PRACTICE — *order of proof.* The court can determine the order in which the proof shall be introduced.

MARRIED WOMEN — *silence about title — estoppel.* A married woman, who has duly recorded her property, is not estopped from asserting her rights thereto, if she was silent when her husband stated that he had the title to the same.

REPLEVIN — *demand.* No demand for a return of property, which has been unlawfully taken, is necessary before the commencement of a suit therefor.

SHERIFF — *parties — liability.* The acts of the sheriff in taking property are the acts of the parties to the suit, and the officer and parties are liable therefor.

### Appeal from the First District, Jefferson County.

THIS action was tried in November, 1870, in the district court, SYMES, J., by a jury that found for Griswold. In October 1871, the court, MURPHY, J., overruled the motion for a new trial, and Boley appealed. The facts appear in the opinion.

E. W. TOOLE and J. J. WILLIAMS, for appellants.

No special damages are claimed in the complaint. Boley, as sheriff, levied on the property by virtue of an execution in favor of Hall and Miller. There is no evidence that Hall or Miller participated in or directed the levy or sale.

2 Estee's Pl. 208, §§ 74, 79, and cases cited. This fact must be proven. It cannot be inferred that Hall or Miller directed the levy or sale of any property, except that of the execution debtors.

The fact of a demand in the case must be proved on the trial. There is no evidence that any demand was ever made of Boley, Hall or Miller, or that they were joint trespassers, or refused to deliver. Civ. Prac. Act, § 177; *Daumiel* v. *Gorham*, 6 Cal. 44; *Killey* v. *Scannell*, 12 id. 75; 2 Estee's Pl. 210, §§ 73, 84. The answer denied every material allegation of the complaint.

Evidence was improperly introduced upon the question of special damages, which were not demanded in the complaint.

Respondent must bring herself within the provisions of the statute exempting her property from execution. Act 1865, 369. She must show that the debt for which the execution issued was not for necessaries, etc. On this point there is no evidence. She must show that the list referred to was on the records of the proper county when the levy was made. The court erred in allowing respondent to state her reasons for not filing her list of property sooner. The reasons could not excuse a strict compliance with the law.

The value of the property, as found by the jury, was excessive, and not supported by any evidence.

At common law, marriage is an absolute gift to the husband of the goods of the wife at the time of marriage. The common law recognizing this doctrine has been adopted in this Territory. The husband is not a party to this action. This action must stand or fall on respondent's title to the property.

The statute requiring the wife's separate property to be on record must be strictly construed. The property, up to the time of filing the list required by the statute, is absolute in the husband. The property in controversy was that of the husband of respondent at the time the debt was contracted by him with appellants. A husband cannot give his wife property to defeat the collection of his debts due

at the time. There is no evidence that respondent ever received the property from her husband. How then did the property become that of respondent?

If the husband has transferred the property to respondent, it is only to the extent of making it exempt from his debts. This does not give respondent possession or dominion over the property, and she cannot maintain an action of replevin therefor. · The filing of the list does not operate as a gift or sale to respondent.

The statute exempts only future debts of the husband, and does not include those that exist at the time of filing the list. The property of the husband is subject to his debts incurred before such filing. It is a new right given without a new remedy. If the new right does not confer possession, the wife cannot maintain replevin. The only remedy of the wife is to prevent the sale of the property by injunction.

Respondent's husband was entitled to the possession of the property as against a trespasser, and she brings an action for it. If the action was by the husband, his possessory right was subject to the attachment. If respondent could maintain replevin against a trespasser, the sheriff, Boley, was not a trespasser for levying upon the possessory right of respondent's husband.

SHOBER & LOWRY, W. F. SANDERS and CHUMASERO & CHADWICK, for respondent.

The taking alleged in the complaint is not denied, but admitted. Appellants say the taking was not "wrongful" or "unlawful." *Lay* v. *Neville*, 25 Cal. 549; *Fish* v. *Redington*, 31 id. 185. No proof of Hall and Miller participating in the sheriff's taking was required.

The evidence of special damages was not objected to by appellants at the trial, and no exception was saved thereto, and judgment cannot be reversed therefor.

The record shows that the debt in the case, under which the seizure was made, was a debt of a ditch company, and not for necessaries to respondent.

The errors of law raised by the statement relate to the order of proof, which was within the discretion of the court. Respondent did not attempt to prove ownership by general reputation. Such proof was introduced to meet the allegations of the answer that she had perpetrated a fraud, or been culpably silent. 1 Cal. Dig. 329, § 89. Respondent had caused her ownership to be known by recording the list of property and complying with the statute.

The specifications of error do not point out the particular errors and must be disregarded. Civ. Prac. Act, § 195. No exceptions to the giving or refusing of instructions were taken at the trial.

Appellants set up an, equitable estoppel as a defense. This cannot be pleaded or proven against a *femme covert.* *U. S. Bank* v. *Lee,* 13 Pet. 107 ; *Morrison* v. *Wilson,* 13 Cal. 494. If her actions and words do not constitute an estoppel, her silence is not such estoppel.

The failure to record the lists does not vest the wife's property in her husband, but makes it liable for his debts, as at common law.

A general exception will not be reviewed on appeal. Exceptions to the charge to the jury must point out the specific portions excepted to. *Hicks* v. *Coleman,* 25 Cal. 132 ; *Newell* v. *Doty,* 34 N. Y. 89 ; 3 Estee's Pl. 503.

Appellants do not show in the statement wherein the evidence is insufficient to sustain the verdict. *Sanchez* v. *McMahon,* 35 Cal. 218 ; 3 Estee's Pl. 618.

A judgment will not be set aside as against the weight of evidence, except in extraordinary cases. *Kimball* v. *Gearheart,* 12 Cal. 27 ; *Treat* v. *Reilly,* 35 id. 129.

When the taking of property is unlawful, no demand is necessary before bringing a suit. *Paige* v. *O'Neal,* 12 Cal. 483.

Appellants cannot now object that there is a misjoinder of parties. They should have demurred in the court below. Civ. Prac. Act, § 45.

WADE, C. J. This is an action to recover possession of seventy-one head of cattle, alleged to be the property of

plaintiff, and wrongfully taken and detained by defendants. It is an ordinary action of claim and delivery of personal property, and by the record it appears, that on the 1st day of July, 1870, the defendant E. M. Boley, as sheriff of Jefferson county, seized the property in question as the property of Cornelius Griswold, by virtue of a writ of attachment duly issued in a suit wherein L. C. Miller and S. M. Hall were plaintiffs, and William Berkins, George Cleveland, Cornelius Griswold and William Munn were defendants; whereupon Sarah M. Griswold, plaintiff, wife of said Cornelius Griswold, claimed the property attached as her sole and separate property, and caused the same to be replevied from the sheriff, and the main question in the trial below was as to the title and the right to the possession of the property in litigation.

The cause comes into the court on appeal from an order overruling a motion for a new trial. Objection is made that the statement on motion for a new trial does not sufficiently, and with sufficient certainty, specify and point out wherein the evidence is insufficient to justify and support the verdict, or wherein the errors of law complained of occur.

The requirements of section 195 of the Code, wherein the mode of proceeding for a new trial is given, seem incapable of being misunderstood or misinterpreted. It is therein provided that the party intending to move for a new trial shall give notice to the adverse party, and that the notice shall designate generally the grounds upon which the motion will be made, and that when the notice designates as the ground upon which the motion will be made the insufficiency of the evidence to justify the verdict or other decision, the statement shall specify the particulars in which such evidence is alleged to be insufficient, and when the grounds of the motion are errors of law occurring at the trial, and excepted to by the moving party, the statement shall specify the particular errors upon which the party will rely. The object of these requirements, and the reason why they are imposed upon the party moving for a new trial, is to notify the adverse party and the court of the

exact error complained of, so that the evidence in the statement may be confined to the elucidation, pro and con, of the matter complained of.

This section does not contemplate that all the evidence produced upon the trial shall be contained and reproduced in the statement, but only so much thereof as is applicable to maintain or to defeat the questions raised on appeal.

The motion *must* designate and specify with exactness and precision the grounds upon which the motion will be made, and these specifications *must* be carried into the statement and form a part thereof, and only so much of the evidence shall be reproduced as tends to explain the specifications of error.

The cause on appeal is to be tried upon questions of law and fact, raised in the statement, and a statement that makes a general assignment of errors as to the law and fact, calls upon the appellate court to form itself into a sort of investigating committee to hunt after possible errors, in the hope that the court will find what the appellant has been unable to do, and if the court should take any notice of such general assignment of errors, it would necessarily be compelled to try the case over again upon the facts, like a case in equity, upon the pleadings and proofs. This court has no jurisdiction for any such purpose, and we must confine ourselves to the investigation of such alleged errors as are specifically raised in the statement.

The specification of errors forms the frame-work of the statement, and .the evidence is only produced to strengthen and support the structure, and make it complete. The specification is not only necessary, in order to direct the attention of the court to the evidence that bears upon the error complained of, but it is equally necessary to enable the adverse party to suggest intelligently such amendments as may be important to the just determination of the case.

It is the duty of the court to settle the statement, so far as the evidence is concerned, if the parties fail to agree, but neither the court nor the adverse party can act intelligently in the premises, until the errors complained of are specifi-

cally designated, for only so much of the evidence should go into the statement as tends to elucidate the point in dispute, whereas, a general assignment of errors would compel a reproduction of all the testimony, and would impose upon the court the duty of trying the case again upon its merits, and this the law does not contemplate.

We say, with Mr. Chief Justice FIELD, in *Barrett* v. *Tewksbury*, 15 Cal. 358, that the specifications must be made when the statements are originally prepared. Nor is there any difficulty in pursuing this course, but, on the contrary, the labor of the parties, as well as their expenses, will be thereby greatly lessened. It is certainly a very simple matter for the party appealing to allege, either at the commencement or conclusion of his statement, that, on appeal, he will rely upon certain errors committed by the court; as for example, in admitting the testimony of a particular witness, or in excluding certain documents, or in giving or refusing certain instructions, or in making particular rulings upon the contract or subjects in controversy. When the grounds are thus specified, it will be an easy matter to state so much of the evidence, as may be necessary to explain and point them out, and the adverse party will be enabled to suggest, readily and intelligently, such amendments to the statement, as he may deem important to their just determination.

There may be cases where equitable relief is sought, in which the general ground of appeal will be, that the decree is not warranted by the evidence; yet, even then, the general ground will be found, in a great majority of instances, subject to more particular specifications, as that the evidence does not establish a contract or show a tender or compliance with particular conditions precedent, or the like, which will constitute the matter urged upon the court.

In the case at bar, there does not seem to have been any notice of motion for a new trial, but as there was no objection raised upon this ground, we must conclude that the notice was given, and that the specifications of such notice were carried into the motion for a new trial, which appears

in the record, and seems to form the specifications of errors in the statement. And, although we believe the specifications of error should form a part of the statement, separate and distinct from the motion for a new trial, we have concluded to examine the grounds for a new trial, as specified in the motion.

The first specification of error is as follows:

"The evidence in the case does not justify the findings of the verdict."

For reasons already suggested, the court will not undertake to ascertain if the evidence justifies the verdict. This would compel the trial of the cause upon its merits. The statement must specify the particulars in which the evidence is alleged to be insufficient. It must point out, with exactness and precision, the weak point in the testimony; otherwise, it will receive no consideration from the court. Any other rule would compel the court to go upon a voyage of discovery through an interminable record, in pursuit of — nothing. We cannot enter upon a speculation so vague and uncertain. One other specification is as follows:

"The court erred in instructing the jury for the plaintiff, as they were instructed by the court at the time."

This specification is of like character to the one already considered, and for like reasons cannot claim the attention of the court. And for another reason: the instructions given on behalf of the plaintiff were not excepted to at the time, and, for all that appears in the record, the instructions went to the jury without objection. We can take no notice of exceptions not taken at the proper time and duly saved; and, if this exception had been taken at the time the instructions were given, and this fact had duly appeared in the record, the exception is of such a general character that it does not meet the requirements of the Code, which provides that the statement shall specify the *particular* errors upon which the party will rely.

Exceptions to the charge to the jury ought to point out the specific portions excepted to and to be made at the time of the trial, in order that the judge may have an opportu-

nity, before the jury retires, to correct any error he may have fallen into in the hurry and perplexities of the trial. *Hicks* v. *Coleman et al.*, 25 Cal. 146. And no exceptions to instructions to the jury ought to be regarded, unless the same are made and presented to the court before the cause is finally submitted to the jury.

We come now to the consideration of the questions in the case that are properly before us for adjudication and decision.

The second specification of error is as follows :

"The evidence does not show that the cattle were worth over $2,690 at the time they were levied upon. The evidence does not show that the plaintiff was damaged in any sum over $10 and detention of the cattle. The evidence shows that the cattle belonged to the husband of the plaintiff, C. Griswold, at the time they were levied on and sold by defendants, Hall and Miller."

Upon the subject involved in this specification, we say this : If there is evidence in the case to fairly support the verdict of the jury, this court will not disturb such verdict. It is the peculiar province of the jury to weigh conflicting testimony, and we can only look into the evidence so far as to ascertain that there is testimony to sustain the verdict. If the testimony is in conflict, part sustaining the verdict and part directly the opposite, this should end the inquiry here. Even if we were satisfied that the weight of the evidence was decidedly against the verdict, yet if the verdict is fairly sustained by any evidence in the case, it will not be disturbed unless it shall appear to be the result of passion, prejudice, fraud, accident or mistake. Any other rule would substitute the court for the jury, and would virtually destroy the benefits of a jury trial. For a further elucidation of this subject we refer to the case of *Ming* v. *Truett*, and the authorities therein cited, decided at the August term, 1871, of this court.

We have examined the testimony as to the value of the cattle, and as to the damages for their taking and detention, and we find there is testimony to support the verdict of the

jury in this behalf, and there is nothing in the case tending to show that the verdict was the result of fraud, accident or mistake. And, although that portion of the specification relating to the ownership of the cattle is too general in its character to compel an examination of the evidence in this regard, yet we have looked into the evidence and find there is testimony in the case tending directly to show that the cattle in question belonged to the plaintiff, and that they did not belong to her husband, and the only remaining questions relate to the instruments of evidence and to the competency of the testimony by which this ownership was established.

However, before proceeding to examine this branch of the case we ought to say that there were no exceptions taken to the proof of special damages, and for all that appears the testimony as to special damages was given to the jury without objection ; and it is too late to make the objection here for the first time.

1. Was the ownership of the plaintiff established by competent proof ?

2. Has the plaintiff by any act become estopped from claiming title and ownership in the cattle ?

3. The plaintiff is a married woman, the wife of C. Griswold, one of the defendants, against whom the attachment issued, and the title of the plaintiff depends upon her compliance with the statute of this Territory authorizing married women to hold property in their own right.

Our statute provides as follows (Bannack Stat. 369) : "That the property owned by any married woman, before her marriage, and that which she may acquire after her marriage by descent, gift, grant, devise, or otherwise, and the increase use and profits thereof, shall be exempt from all debts and liabilities of the husband, unless for necessary articles procured for the use and benefit of herself and her children under the age of eighteen years. *Provided, however*, that the provisions of this act shall extend only to such property as shall be mentioned in a list of the property of such married woman, as is on record in the office of the register

of deeds of the county in which such married woman resides."

The testimony shows that before the plaintiff was married she was the owner of a mining claim in Alder gulch from which she realized some $4,000 or $5,000; that after her marriage she took this money east and bought groceries and brought them to this Territory, and sold them, and, with the money arising from such sales, she went to Salt Lake and purchased ninety-one head of cattle in her own name, receiving at the time of such purchase a bill of sale of the cattle, containing a description and the number of the cattle purchased, and a receipt for the money paid, which bill of sale was properly stamped and dated May 11, 1867. This bill was duly recorded in the register's office, for Jefferson county, on the 16th day of August, 1869, and before the debt of defendants was contracted.

On the 11th day of May, 1870, a second list of the same property and the increase thereof was duly recorded with said register, and this record was made before the suit in attachment was commenced.

The object in requiring this list of the wife's property to be recorded, is to give notice to the world, that she is the owner so that her husband cannot obtain credit upon the strength of her property. After this record is made, it is notice to every one, and although the property remains in the possession and control of the husband, the person trusting or giving credit to the husband upon the strength of such property does so at his peril. The statute was designed for the protection of married women, and courts will carry this object into execution when the proper case is made. That the money paid for these cattle originally belonged to the plaintiff in her own right is not disputed; that she became the owner of the cattle by virtue of her purchase, is also admitted. And we think that procuring the original bill of sale, wherein a description of the property is given, to be recorded, and also procuring a subsequent list showing the increase, to be likewise recorded, is a sufficient compliance with the statute.

Indeed, we fail to see why it is not a strict compliance with the language of the act.

With these lists of the property duly recorded with the register of deeds of the proper county, if any one was deceived as to who owned the property, such deception must have been the consequence of his own negligence and carelessness. The record is the best evidence, and is provided alike for the protection of the married woman and the creditor of the husband, and he who fails to avail himself of the notice that the law compels to be given for his protection, suffers from his own act, and is without remedy.

The debt upon which the attachment was issued was contracted by Berkins, Cleveland, Griswold and Munn, who comprised a ditch company, and it was a debt against this company, and it sufficiently appears by the record, that it was not a debt of Cornelius Griswold, contracted for necessary articles procured for the use and benefit of his wife and children. Under the statute, a debt of the husband, contracted for the necessary support of his wife and children, could be collected from the separate property of the wife, but it is perfectly apparent, from the testimony, that the debt under consideration is not one of this privileged character.

Objection is made that the court permitted the plaintiff to show, by general reputation, that she was the owner of the cattle.

If it were true that testimony of this character was introduced and received in evidence, for the purpose of showing title in the plaintiff, the objection would have been well taken, but an examination of the issues in the case will show that this testimony was offered for another and a very different purpose, and, if we understand the issues correctly, was competent proof.

The answer charges that the property in question belonged to Cornelius Griswold, the husband of plaintiff, and that the plaintiff and her husband conspired together, for the purpose of hindering, delaying and defrauding his creditors, and that the claim of plaintiff was fraudulent and void.

Under this allegation, proof was offered by defendants tending to show that plaintiff had allowed her husband to control the property and to call it his, and to exercise acts of ownership over it, with her consent, and that by such acts of the plaintiff, the defendants supposed, and had the right to suppose, that the husband was the owner. And for the purpose of rebutting this allegation and proof, as to fraud and conspiracy by plaintiff and her husband, it was competent and legitimate proof on her part to show, that it was generally known in the neighborhood that the property belonged to plaintiff. This proof was not offered to show title. That the property was originally purchased with plaintiff's own separate money, and that she became the lawful owner thereof, by virtue of such purchase, was not disputed, so that there was no occasion to undertake to show title by reputation, which never could be done, but this proof was offered to rebut the allegation of fraud and deception on the part of the plaintiff, and to show that defendants had not been fraudulently deceived as to the ownership of the property, and for this purpose the testimony was legitimate and competent.

And the time when this proof should have been offered and received in evidence was purely within the discretion of the court. The court can direct the order of proof. To meet the allegation of fraud in the answer, it was competent for the plaintiff in laying her case before the jury to answer this charge, or she could have produced this proof in rebuttal, after the defense had rested their case. Either would have been in order under the direction of the court.

2. It is claimed in the answer, and proof was offered tending to show that the plaintiff stood by and permitted her husband to represent and claim the property as his own, and that in consequence of such claim and representations the defendants were induced to give the credit to said Cornelius Griswold, upon which said indebtedness is founded, and that by reason thereof the plaintiff is estopped from asserting any claim to the property.

At common law the personal property of a married

woman becomes her husband's by his act of reducing the same to possession, and it was subject to be taken to satisfy his debts. This rigorous and unjust rule, by the enlightened legislation of most of our States and Territories, has been so far encroached upon and abrogated as to authorize and permit married women to hold and enjoy their separate property, freed from liability for the husband's debts. Our statute thus enlarges the rights of married women, and provides that their property shall not be subject to the debts of the husband, and it points out the mode by which such property shall be held and preserved. Bannack Stats. 369. When a list of the separate property of the wife is recorded. as required by the statute, it is entirely freed from the debts of the husband, as fully and as completely as if the marriage relation did not exist. When the statute is complied with its prohibition is absolute. And as to this separate property of the wife, it is competent for her to make her husband her agent to take care of and sell and dispose of the same, and after the list of property has been recorded as required, the possession of the husband confers no rights upon him or his creditors. The record is notice, and the possession of the husband raises no presumptions against the wife. The very object in requiring a record is to authorize the husband to retain possession and at the same time provide the means whereby the public shall not be deceived as to the ownership of the property.

After a list of the property has been recorded as required by the statute, the wife cannot be estopped from asserting her claim to the same by her silence, and her silence is what is complained of, no affirmative act being charged against her. If the husband should represent and claim the property as his own, with the knowledge of his wife, this would not be an estoppel, for the reason that she has placed upon record her title, which is notice to all the world, and that record can no more be contradicted by mere verbal declarations of third persons than can a deed. The wife is not obliged to publish the fraudulent conduct or the false assumptions of her husband.

It is not claimed that the wife ever made any representations or performed any act tending to show that the property belonged to her husband, but it is claimed that by her *silence* she has permitted the husband to claim the property, and that by her *silence* she has permitted the creditors to be deceived, and that by her *silence* she is estopped. It is a sufficient answer to this claim to say that when the wife caused a list of her property to be recorded with the register of deeds, she was not silent but spoke, not only to the creditors of her husband, but to every one beside, and thereby informed them if they gave credit to her husband, on the strength of her property, they did so at their peril. If lands were conveyed to the wife by a warrantee deed in fee simple which was duly recorded, would the assertion or representation of the husband, in her presence, that the land belonged to him, and was his own property, estop the wife from claiming under the deed? So if the wife has record title to personal property and her husband should claim the same as his own, in her presence, would she be thereby estopped from asserting her claim by the record?

In the case of *The Bank of the United States* v. *Elizabeth Lee et al.*, the court say: "We are asked to deal with the conduct of the wife living in harmony with her husband as if she was a third person, and to decree against her because she did not expose her husband to the community in which she lived, and especially to the complainants, when, within the wife's knowledge, he was holding out her property as his own, and using of it as his own, and obtaining credit upon the faith that he was the true owner. That Richard B. Lee did deal with and use the property in controversy as if he had been its owner, and that the community did believe him the true owner and give him credit on the faith of the property, is no doubt true, and it is very probable that Mrs. Lee knew the fact, but continued passive and silent on the subject. Was it the duty of Mrs. Lee to advertise to the community in which she lived, that her husband had no title to the property on the faith of which he was obtaining credit, but that it was hers? All we need

say is that a court of chancery cannot hold Mrs. Lee responsible for her silence." 13 Pet. 107; *Morrison* v. *Wilson and wife*, 13 Cal. 494.

The doctrine of these cases applies with much stronger force where, in pursuance of the statute, the wife had in the most solemn manner given notice to the public that she was the owner of the property, and that, too, before the husband had obtained any credit upon the strength of her property, and before the debt of the husband was contracted. And here will be seen the competency of the testimony tending to show that the public generally knew that the property belonged to the plaintiff.

The answer does not charge that the plaintiff had done any affirmative act designedly to induce the defendants to give credit to her husband, and the testimony does not go beyond the answer in this respect, but it simply charges, that she had permitted her husband to claim the property as his own, and this, after a public record of the property had been made according to law, is no estoppel.

3. At the time the property was taken by the attachment of defendants, it belonged to the plaintiff, and the taking was unlawful, and no demand for a return of the property was necessary before replevin. The property was taken by the sheriff at the suit of defendants. His taking is their taking. He acts for them as their agent, and his acts are their acts, and both are liable.

*Judgment affirmed.*