## Woods, respondent, *v.* Berry, appellant.

*Whether a sale of a stock of goods was fraudulent, held to be a question of fact for a jury.* — In an action of claim and delivery against a sheriff, the testimony showed that the plaintiff had bought several notes executed by a firm, amounting to several thousand dollars, paying the sum of nine dollars for them; that afterwards he bought from the said firm a stock of goods, the subject of the action, for the price of six thousand dollars, and made payment by surrendering to the firm their notes, a portion of those he had bought, amounting to said purchase price.   After the sale, the plaintiff kept the goods in the same store that had been used by the vendors, and employed the same clerks that they had employed.   He took down the sign of the vendors, however, and substituted one bearing his own name.   The special findings of the jury in the case were: 1. That there was no fraudulent intent; 2. That there was an actual delivery, and a continuous change of possession of the goods.   *Held*, that the verdict could not be reviewed, as there was evidence to sustain it.

PLEADING. — *Ad damnum averment not essential.* — The complaint in the case at bar set forth that the plaintiff was the owner and in possession of certain goods, of the value of four thousand dollars.   There was no *ad damnum* allegation.   *Held*, that such an allegation was not essential.   *Loeb* v. *Kamák*, 1 Mont. 153, followed.

CIVIL PRACTICE. — *Where there is no issue raised as to a certain point in the pleadings, questions asked on the theory that there is such an issue should be disallowed.* — The answer in the case contained no allegation that the plaintiff was not the real party in interest, and there was no issue raised in the pleadings as to that point. *Held,* that there was no error in refusing to allow defendant's counsel to ask certain questions for the purpose of showing that plaintiff was not the real party in interest.

CIVIL PRACTICE. —*The proper form and manner of taking exceptions to instructions defined.* —*Held,* "1. That in order to save his objections to any or all of a series of instructions, the party objecting must save his exceptions separately to each separate instruction objected to, and must designate, either by number or by any other certain method, each one of the instructions to which he objects, so that the court may definitely know which instructions are objected to, and may consider each exception separately. See *Griswold* v. *Boley,* 1 Mont. 545; *Gum* v. *Murray,* 6 Mont. 10. 2. In an exception to an instruction, it is not necessary to point out the particular error complained of, whether it be that the same is against the law, or that it is against the evidence. See sec. 281, div. 1, Rev. Stats. Mont.; sec. 291, div. 1, Comp. Stats. Mont.; *McKinstry* v. *Clark,* 4 Mont. 370."

NOTE. — In both criminal and civil cases in Montana, the giving, or refusal to give, instructions, and any modification of an instruction, are deemed excepted to, and no exception need be taken. See acts of extra session of legislature of 1887, p. 67.

*Appeal from District Court, Missoula County.*

T. L. NAPTON, for the appellant.

This is an action of conversion. The complaint contains no *ad damnum* clause. The allegation of the value of the property is by way of recital, and any objection to any evidence as to damages, made by defendant on the trial, is sufficient for reversal of this cause. See 2 Estee's Pleadings, 2d ed., p. 70, and authorities there cited as to nature of action. The sale, regardless of the question of good faith, is void under sections 169 and 170 of the statute of frauds. The stock of goods, etc., were left in the same house, and in charge of the vendor's clerk. Our statute makes the transaction conclusive evidence of fraud, and although the authorities differ, the weight is evidently in favor of giving to the statute its full meaning. *Allen* v. *Massey,* 17 Wall. 333–354; *Hamilton* v. *Russel,* 1 Cranch, 310; *Woods* v. *Bugbey,* 29 Cal. 419; *Stephens*

v. *Irwin,* 15 Cal. 506; 2 Tenn. Ch. 746, as to chattel mort-
gage.   The rule as laid down in the different states on
the question of change of possession is fully shown in
Wait on Fraudulent Conveyances and Creditors' Bills,
page 348; and to leave the property in charge of the
vendor's clerk is no change of possession.   *Brunswick* v.
*McClay,* 7 Neb. 137.   The court in this case instructed
the jury that such fact did not even tend to prove fraud.
*Worman* v. *Kramer,* 73 Pa. St. 378.

SANDERS, CULLEN, & SANDERS, and STEPHENS & BICK-
FORD, for the respondent.

The evidence clearly shows a sale to the respondent,
and a delivery of the possession of the property sold;
that such sale was made for a valuable consideration,
with an immediate delivery, and was followed by an
actual and continued change of possession.   The special
findings of the jury were to this effect.   *Murphy* v. *Briggs,*
89 N. Y. 451; *Seymour* v. *Wilson,* 19 N. Y. 417; *Cook* v.
*Tullis,* 18 Wall. 340; *Schulter* v. *Harvey,* 65 Cal. 158; *Frey*
v. *Clifford,* 44 Cal. 335; *Dudley* v. *Danforth,* 61 N. Y. 626.
The question of fraudulent intent being a question of
fact under the law (Rev. Stats. Mont., sec. 174, p. 473),
and having been determined by the jury, the judgment
will not be reversed unless manifestly against the weight
of evidence.   *Story* v. *Black,* 5 Mont. 26; *Jaeger* v. *Kelley,*
52 N. Y. 274.   The debtor, having absolute control over
his own property, may do what he pleases with it, so long
as his act is consistent with good faith.   See Wait on
Fraudulent Conveyances, sec. 14, and cases cited; *Dud-
ley* v. *Danforth,* 61 N. Y. 626; *Dana* v. *Stanford,* 10 Cal.
269.   The assignment of error relative to all the in-
structions to the jury is so general in its terms that it is
not possible to look at each separately and in the order
given.   Collectively they state the law correctly.   *Alli-
son* v. *Hagan,* 12 Nev. 57–59; Mont. Stats. 437, sec.

175; *Kaine* v. *Weighly,* 22 Pa. St. 179; *Jaeger* v. *Kelley,* 52 N. Y. 275; *Seymour* v. *Wilson,* 19 N. Y. 418–421; *Godchaux* v. *Mulford,* 26 Cal. 325; *Ford* v. *Chambers,* 28 Cal. 13. The exception to the instructions is too general to be considered. *Beaver* v. *Taylor,* 93 U. S. 54; and authorities there cited; *Ayrault* v. *Pacific Bank,* 47 N. Y. 576; *McKinstry* v. *Clark & Cameron,* 4 Mont. 370; *Gum* v. *Murray,* 6 Mont. 10; *Starin* v. *Kelly,* 88 N. Y. 421; *Dudley* v. *Danforth,* 61 N. Y. 627. The only restriction placed by the law upon sales is, that they shall be made in good faith. Even if this was the case of a purchase by a person not a creditor, the burden of proof as to fraudulent intent would be upon the party alleging the fraud, and in such case there must be a mutual intent, and mutual participation in the fraudulent intent, on the part of both the vendor and purchaser. *Curtis* v. *Valiton,* 3 Mont. 157, cited in Wait on Fraudulent Conveyances, sec. 199; and also *Mehlhop* v. *Pettibone,* 54 Wis. 652, and many other cases cited. The objection that the judgment is not supported by the pleadings nor the verdict can only mean that the judgment should have been in the alternative. The papers show what disposition was made of the goods of respondent, and the utter impossibility of respondent returning them. The act of entering up a judgment for an absolute sum of money was no injury to appellant, and a judgment will not be reversed for immaterial errors. *Page* v. *O'Neil,* 12 Cal. 483; *Hoag* v. *Pierce,* 28 Cal. 187; *Tyler* v. *Green,* 28 Cal. 407; *Boyce* v. *Cal. S. Co.,* 25 Cal. 460; *Barkley* v. *Tieleke,* 2 Mont. 433; *Mason* v. *Germaine,* 1 Mont. 263; *Kilburn* v. *Richie,* 2 Cal. 145; *Wilkinson* v. *Parrott,* 32 Cal. 102; *Caruthers* v. *Pemberton,* 1 Mont. 111; *Garwood* v. *Wood,* 34 Cal. 248; *Norwood* v. *Kenfield,* 30 Cal. 393; *Hicks* v. *Whiteside,* 23 Cal. 404; *Henry* v. *Everts,* 30 Cal. 425; *Young* v. *Emerson,* 18 Cal. 417; *Moon* v. *Rollins,* 36 Cal. 333; 95 Am. Dec. 181. It is not necessary that a

judgment in the alternative should be rendered. *Brown
v. Johnson*, 45 Cal. 76.   Let us suppose that the vendors
were actuated by a fraudulent intent, that would be suffi-
cient to set aside the sale on the ground of fraud only
in a case where the conveyance was voluntary. *Starin
v. Kelly*, 88 N. Y. 421; Wait on Fraudulent Conveyances,
sec. 199, citing *Curtis* v. *Valiton*, 3 Mont. 157; *Mehlhop* v.
*Pettibone*, 54 Wis. 379; *Hall* v. *Arnold*, 15 Barb. 600;
*Wilson* v. *Prewit*, 3 Woods, 635; *Hopkins* v. *Langton*, 30
Wis. 379; *Steele* v. *Ward*, 25 Iowa, 535. The grantee
must know the fraudulent intent of the grantor.  Wait
on Fraudulent Conveyances, 277; *Prewit* v. *Wilson*, 103
U. S. 24; *Curtis* v. *Valiton*, 3 Mont. 157.

THE opinion states the facts.

BACH, J.   This is an action of claim and delivery.
The defendant, who was sheriff of Missoula County, in
answer to the complaint, admits taking the property;
and he seeks to justify the taking by alleging that he
seized the property under and by virtue of certain writs
of execution issued upon judgments in favor of several
different parties plaintiff, and against Savage & Reed,
defendants; that Savage & Reed were plaintiff's ven-
dors; and that the sale between Savage & Reed and the
plaintiff was made without any consideration whatever,
and was so made for the purpose "of defrauding and
cheating and swindling the creditors" of Savage &
Reed.

The testimony shows that the plaintiff bought several
notes executed by Savage & Reed, amounting to several
thousand dollars; that he paid nine dollars for the same;
that thereafter he bought from Savage & Reed the goods
mentioned in the complaint, for the price of six thou-
sand dollars, the payment being made by surrendering
the notes of Savage & Reed for that amount; that after
such purchase and sale the plaintiff kept the goods in the

store formerly used by Savage & Reed; that at the time of the sale he removed from the store the sign of Savage & Reed, and substituted therefor a sign bearing his own name; that he employed the clerks who were formerly in the employ of Savage & Reed. The plaintiff further testified: "There was no understanding that I was to pay any one any part of what I collected on the notes. I was not to pay anything more than I had paid for the notes. They were placed in my hands without reserve."

The case was tried by the court and jury. Verdict was for the plaintiff, and judgment was entered in favor of the plaintiff. Thereafter motion for a new trial was heard and denied. The appeal is from the judgment, and from the order denying the motion for a new trial.

Is the evidence in this case insufficient to justify the verdict? The facts in the above summary of the evidence are such that the jury might have found fraudulent intent, or fraud in fact, and some of that evidence might have justified the jury in finding that there was no actual delivery of the property to the plaintiff, or a continuous possession thereof by the plaintiff. The purchase of notes to the amount of several thousand dollars for the sum of nine dollars may have been a cover for fraud in fact, or it may have been a *bona fide* purchase of the notes by the plaintiff, who took the risk of collecting; he declares that he was the owner, and that there was no agreement between him and the original holders of the notes, or with any one else, to account for the overplus, if any. In the one case it might be evidence of fraud; in the other, there could not be fraud inferred. The fact that he kept the goods in the same store is evidence tending to prove fraud in fact, and also that there was no actual change of possession. The change of the sign was a question for the jury to consider, as was also the employment of the former clerks of the vendors.

But these are facts merely tending to prove fraud and want of actual delivery. The jury passed upon those facts; and the jury, by their special verdict in this case, find,—1. That there was no fraudulent intent; 2. That there was an actual delivery, and a continuous change of possession, of the goods. This court cannot review that verdict, there being evidence to sustain it.

The complaint alleges that the plaintiff was the owner and in possession of certain goods " of the value of four thousand dollars." The complaint contains no *ad damnum* clause. For that reason the defendant claims that the complaint does not state facts sufficient to constitute a cause of action. The judgment asked for the return of the property, or, in case return could not be had, then for the value thereof. It has been held by this court that an *ad damnum* clause is not an essential allegation. *Loeb* v. *Kamak,* 1 Mont. 153.

The next point relied upon is the refusal of the court to allow defendant's counsel to ask certain questions for the purpose of showing that the plaintiff was not the real party in interest. It is not alleged in the answer that the plaintiff was not the real party in interest; there was no issue as to that, and the questions were properly disallowed. *Savage* v. *Insurance Co.,* 4 Bosw. 2.

To the instructions given by the court at the request of the plaintiff the defendant took the following exception: " Now comes the defendant, and objects and excepts to giving to the jury the instructions asked for by the plaintiff, numbered 1 to 16, inclusive, and objects and excepts to the giving of each and every one of them, for the reason that the same and each, and every one of them, are contrary to law, and not warranted by the evidence." Is this exception of such a nature that this court can consider it? There have been many decisions upon this point in this court, some of which seem to be conflicting, while as a matter of fact they are in

harmony with one another, and the seeming inconsist-
ency arises from this cause: that the reason given for
the decision were not distinctly specified.   The three
leading cases in this territory are *Griswold* v. *Boley*, 1
Mont. 545, which has been cited in many others; *Mc-
Kinstry* v. *Clark*, 4 Mont. 370, which arises on a differ-
ent question, and which, while it approves of the former
case, still holds that the exceptions were properly taken
in that case; and *Gum* v. *Murray*, 6 Mont. 10, which ap-
proves *Griswold* v. *Boley*.

While considering this proposition, care must be
taken to distinguish between these two questions, to
wit: 1. What is the proper manner of taking exceptions
to instructions?   2. To what extent must the error com-
plained of be particularly stated in an exception to an
instruction?   To the first of these questions, the cases of
*Griswold* v. *Boley* and *Gum* v. *Murray* are specific and
direct answers.   To the second of these questions, the
case of *McKinstry* v. *Clark* is also a specific and direct
answer; and while it approves the doctrine as stated in
the other cases, it holds that the manner of taking the
exceptions in that case were in compliance with the rule
as stated by those cases; and it also states what is a suffi-
cient pointing out of the error complained of.

Now, let us consider these cases more in detail, com-
mencing with the case of *McKinstry* v. *Clark*, and exam-
ine the points actually decided in that case.   In order
to carefully ascertain and point out the distinction, the
transcripts in the last two cases have been examined.

In the case of *McKinstry* v. *Clark*, the appellant saved
his exception in this manner: He copied the first in-
struction given by the court at the request of the re-
spondent, and at the end thereof he took his exception
by adding the following words: " To the giving of which
instruction the plaintiff excepted."   He then copied the
second instruction, and took his exception in the same

mode and manner. Every exception which he took was taken in that way; in other words, he took a separate exception to each separate instruction. It was declared by the court,— 1. That the exceptions were properly taken as to manner; 2. That there was a sufficient specification of the error. We will consider the first point further when we consider the other cases. As to the second point decided, section 281 of our code defines an exception, and declares what an exception shall contain; and as far as that definition is concerned, our code differs from that of California, and from that of every state to whose decisions our attention has been called. Therefore the rule of practice in that respect must be found in our own code, without resort to authorities decided upon different and dissimilar provisions.

Section 281 of the code provides: " The point of the exception shall be particularly stated, except as provided in relation to instructions," etc. It is plain that the intent of the legislature was that, in an exception to an instruction, the point of the exception need not be particularly stated; and so the court declared in *McKinstry* v. *Clark*. The propriety of the intent of the legislature becomes manifest when we consider how nearly impossible it would be for counsel, at the end of a protracted trial, to point out particularly in what respect the instruction complained of was contrary to the law, as applied to the particular case, or in what respect it was contrary to the evidence, and to reduce the whole objection, in each of its particulars, to writing. In some states, these difficulties resulted in a rule declaring that instructions will be deemed to have been excepted to. In this territory, those difficulties resulted in the declaration contained in section 281, that the point of the exception need not be particularly stated in an exception to an instruction.

We will now consider the first question,—"In what manner must an exception be taken to an instruction?" and in connection therewith the cases of *Griswold* v. *Boley* and *Gum* v. *Murray*.

The manner of taking the exception in those cases is almost identical with that in the case at bar; and the difference between the manner of taking the exception in those cases and that used in *McKinstry* v. *Clark* is manifest. In the former cases, including the case at bar, there was one, and only one, exception to several instructions in gross; while in *McKinstry* v. *Clark* there was a separate exception, taken separately, to each separate instruction objected to. The first form or manner of taking an exception was declared to be of no avail by the cases of *Griswold* v. *Boley* and *Gum* v. *Murray*. The second form was held to be good, both as to the manner of taking exception and as to the manner of pointing out the objection, by the case of *McKinstry* v. *Clark*.

It might be sufficient to say that *Griswold* v. *Boley* and *Gum* v. *Murray* had settled the practice in this territory; but we will add a few authorities which, because they are founded upon provisions similar in nature to ours, are directly in point. In *Caldwell* v. *Murphy*, 11 N. Y. 416, the exception taken was "to each and every part" of the charge. Held, that the exception was insufficient. In *Walsh* v. *Kelly*, 40 N. Y. 556, the form of the exception was "to the charge made by the court, and each and every part thereof." It was admitted that some of the propositions in the charge were correct. Held, that such an exception did not raise any question for review on an appeal. In *Ayrault* v. *Pacific Bank*, 47 N. Y. 576, the form of the exception was to "the refusal to charge each of the requests submitted, except so far as embraced in the charge delivered"; and also another exception, "to every part of the charge which is inconsistent with such requests." Held, that the exception

did not present any question for review. In *Beaver* v. *Taylor*, 93 U. S. 46, these cases are cited with approval. Mr. Justice Hunt delivered the opinion of the court, and on page 54 of the case the learned judge says: " If the entire charge of the court is excepted to, or a series of propositions contained in it is excepted to in gross, and any portion of it thus excepted to is sound, the exception cannot be sustained." See also *Yates* v. *Bachley*, 33 Wis. 185; and *Hopkins Manfg. Co.* v. *Aurora F. & M. Ins. Co.*, 48 Mich. 148.

To state the principle to be educed from the foregoing authorities, and to state distinctly the decision in this court, it is held,—1. That in order to save his objection to any or all of a series of instructions, the party objecting must save his exception separately to each separate instruction objected to, and must designate, either by number or by any other certain method, each one of the instructions to which he objects; so that the court may definitely know which instructions are objected to, and may consider each exception separately. See *Griswold* v. *Boley*, 1 Mont. 545; *Gum* v. *Murray*, 6 Mont. 10; 2. In an exception to an instruction it is not necessary to point out the particular error complained of, whether it be that the same is against the law or that it is against the evidence. See Code, sec. 281; *McKinstry* v. *Clark*, 4 Mont. 370.

In the case on review, the exception stated the ground of objection, to wit, that the instructions " are against the law and the evidence "; and in this respect the objection was pointed out more particularly than is required by the code, and by the interpretation of the code, as stated in *McKinstry* v. *Clark*. There was only one exception, and the form or manner of taking the exception was " to each and every " of the sixteen instructions. It is therefore too general. *Griswold* v. *Boley*; *Gum* v. *Murray*, and the other cases cited. It is possible that in

other cases in this court instructions have been considered when the exception was of the same general nature. If there are such, the respondents did not call the attention of the court to them; but in this case the respondent invokes the rule in his behalf, and it must be enforced.

There being no error, the judgment and the order denying the motion for a new trial are affirmed, with costs.

*Judgment affirmed.*

McCONNELL, C. J., and McLEARY, J., concur.