McKinstry, appellant, *v.* Clark & Cameron, respondents.

Evidence— *Certified copies.*— A certified copy of the record of a declaratory statement or deed is made competent evidence, by the statutes of Montana, without producing or accounting for the loss of the original instruments.

Burden of Proof.— In a case where defendants claim by virtue of two locations made from a single discovery hole, where only one could be valid, it was error in the court to charge that a plaintiff in an action of ejectment, claiming the premises by virtue of a relocation, should bear the burden of proving which one of the two locations was invalid.

Right of possession comes only from a valid location.

Only so much of the evidence need be stated in the abstract as may be necessary to explain an objection.

EXCEPTIONS.— Exception taken in writing at the proper time to each of the instructions given at the instance of one of the parties to an action, so far as the same were separately numbered and marked by the judge, was sufficient compliance with the law, and not within the objection declared in *Griswold* v. *Boley*, 1 Mont. 549, and *McKinney* v. *Powers*, 2 Mont. 466.

*Appeal from Second District, Deer Lodge County.*

HIRAM KNOWLES, for plaintiff and appellant.

The court erred in allowing defendants to introduce in evidence the certified copy of the statement of location of the Sankie lode without proof of the loss of the original statement of location.   It also erred in allowing the introduction in evidence of the certified copy of the deed from Ford to Cameron without proof of the loss of the original.

The rule as to the introduction of parol evidence of the contents of an instrument, or a certified copy of an instrument, or of the record thereof, is generally that this proof of the loss of the original must first be given. Greenl. on Ev. secs. 84, 557, 558, and note 6 to sec. 84.

It is specially provided in our statutes (see Laws of 1879, p. 442, sec. 206), that a certified copy of a deed can be introduced in evidence only when the proof of the loss of the original is first made.   Special statutes upon a subject control over a general statute which might embrace it.   Sedg. on Stat. & Const. Law, 36*a*, note *a*.

In California, when the statutes of that state were similar to those of Montana, the courts of that state held that there should be proof of the loss of an instrument before a certified copy could be introduced in evidence. *Touchard* v. *Keys*, 21 Cal. 210, 211; *Garwood* v. *Hastings*, 38 Cal. 219.

The court erred in giving instructions Nos. 4, 5, 7 and 8.   These instructions were not based upon any evidence in the case.   There is nothing in the evidence to show which one of these claims, called the Sankie, Dr. Ford

located first. There is nothing in the evidence to show that either one of the Sankies was located first. As far as the evidence goes, it shows that the location of the Sankie west of discovery was located first. The Sankie west from discovery was recorded first. See location notices, Transcript, pp. 29–45. There is no evidence in the case that tends to show that Dr. Ford ever made more than one discovery on the Sankie vein. Both notices speak of the location commencing at discovery shaft. See Transcript, pp. 29–45. As far as the evidence tends to show any discovery it is confined to one shaft.

Where instructions are not based on some evidence in the case they should be refused. *Trustees of Iowa College* v. *Hill*, 12 Iowa, 462; *Shaw* v. *Brown*, 13 Iowa, 508; *State of Iowa* v. *Gibbons*, 10 Iowa, 508; *People* v. *Roberts*, 6 Cal. 214; *Tompkins* v. *Mahoney*, 32 Cal. 282; *People* v. *Hurley*, 8 Cal. 390; *People* v. *Sanchez*, 34 Cal. 17. And to give such instructions is error which will reverse a judgment. *Mendelshon* v. *Anaheim, Lighter & Co.* 40 Cal. 657; *United States* v. *Gotlieb Batling*, 20 How. (U. S.) 252; 2 Miller (U. S.), 383; *Michigan Bank* v. *Eldred*, 9 Wall. 553–4; *Alger* v. *Gardner et al.* 54 N. Y. 360.

Again. Instructions should correspond to the issues presented by the pleadings. There was no issue of forfeiture in the case. The above instructions instruct the jury upon representation. This only comes in question when an issue of forfeiture is made. There was no such issue in this case. *Lexington Ins. Co.* v. *Taver*, 16 Ohio, 324; *Fairbanks* v. *Woodhouse*, 6 Cal. 434; *Nolen* v. *Wisner & Van Nash*, 11 Iowa, 190; *Conlin* v. *S. F. & S. J. R. R. Co.* 36 Cal. 404.

The court erred in giving instructions Nos. 2 and 7 asked by plaintiff. They were not supported by the evidence. There was no evidence to show that Ford ever staked that ground before he recorded his location notice or statement. The court held that he should have done this. There was nothing to show that Ford ever made

a valid location of that claim as required by law. There is no evidence that shows that Ford ever did stake that ground.

The court erred in giving the third instruction asked by defendants. This instruction is to the effect that if there is no evidence that this ground was public domain at the time plaintiff made his location, then the jury must find for defendants. This would require the defendants to prove that the ground had never been located by any one prior to the time when plaintiff located it, or if so, it had been forfeited. They are instructed that they must find affirmatively that it was subject to location. This rule would require a plaintiff in ejectment for a mining claim to allege that the ground he located was public domain when he located the same. Now, when a man locates a mining claim, he must be considered a purchaser of the same as much as if he obtains a deed therefor. He does not take by devise. Now, in actions for ejectment, ordinarily, the plaintiff does not need to prove that his grantor never before conveyed away the estate he claims. If he has, it devolves upon the defendants to show it. See Instructions of Juries, Sackett, 116.

The plea is urged that ground must be unoccupied public domain before a location could legally be made. A person who receives a deed to a piece of land from one who has parted with his title to the same receives a void conveyance. He gets nothing by it. Yet it has never been held that a plaintiff in ejectment must prove that his grantor never conveyed to any one else the ground embraced in his deed. Such a fact is never alleged and never proved. In this the jury were instructed that they must find affirmatively that this ground had never been located by any one, or if so, it had been forfeited, before they could find for plaintiff. There was no evidence and no issue in the case to warrant the instruction.

It is an established rule in practice, that when the plaintiff shows *prima facie* a title, the defendant can de-

feat this by showing title in himself. Here, however, the jury were instructed that they must find that no one had any title before plaintiff's location.

The court erred in giving the sixth instruction asked by defendants. There was no evidence that the claim in dispute was a relocation. It is true, one of the witnesses uses that term, but there are no facts to support the assertion. The case was tried upon the theory that if the claim ever in fact had been legally located by Dr. Ford, that ended the case. Here again we are called upon to disprove defendants' title before the same was established by them; plaintiff is called upon to prove which one of the Sankie claims was located last. It had been shown that Dr. Ford claimed two claims, one east and the other west from the same discovery shaft. Which was located first, if either, was peculiarly within his knowledge. He probably was the only one who knew if the locations were ever made. The defendants claim through him.

The general rule is, that facts peculiarly within the knowledge of a party he ought to prove. 1 Greenl. on Ev. sec. 79; *Dupont* v. *Dunning*, 6 Iowa, 172.

If the rule announced by the court in this case is correct, then the door is effectually shut as to the attacking of double or treble locations on the same vein.

The defendants are presumed to know the sources of their own title.

The instruction contained the clause, "if defendants were in possession of said Sankie claim." Now, what difference this made I do not see. If the defendants were only in possession, then if the plaintiff made a valid location of the ground they would have the best right. Possession will not prevail against the title. One who is in possession of mining ground without locating the same according to law is a trespasser. A locator, according to law, is a purchaser and has a grant from the general government. This whole instruction has the effect of holding that it is not necessary for the defendant to

prove that he had a valid location after defendant had proved one and let the best title prevail; but that the plaintiff must disprove defendant's title; must prove he had none, before he could recover.

In several of the instructions the court uses this language: "Valid location." "In the manner required by law." And yet the court nowhere tells the jury what is a valid location, or when a location is made according to law. The jury were left to determine these matters for themselves. That is, they were required to determine what the law was as well as the facts.

In the case of *The People* v. *Thomas Bynes*, 30 Cal. 207, it was held that if a court had not given the definition of *unlawful* in a trial for murder, it would have been error.

Taking the fourth, fifth and sixth instructions given by the court at the request of defendant, and you find it lays down the rule that defendant's grantor could locate one valid claim on the Sankie; that the one he first located was the valid one, and that it devolves upon plaintiff to prove which was invalid.

Now there are several acts constituting the location of a mining claim: First, the discovery of a vein of mineral-bearing ore; then the claiming the same; then the marking out the boundaries of the claim so that they can be readily traced; then the making out a declaratory statement under oath, and making the same a record, in which the claim shall be so described, by reference to some natural object or permanent monument, as will readily identify the same. If the locator stops short on any of these, he has not located his claim. In one of the instructions asked by plaintiffs and given (see page 00 of transcript), the court lays down the rule that the claim to which he first perfected his title must be the one he can hold, if either.

Now in this case we know the one to which he first perfected his title. The location of the claim in dispute

in this case was not the one to which he first perfected his title, but the other location going west from discovery. Ordinarily, I suppose, the record will go back to the first act of location. In this case it is difficult to tell which acts pertained to the location east, and which to the west. There was but one discovery hole, but one notice. The stakes on the line between the two locations pertained to both locations, if any were ever placed there by Dr. Ford. It would seem, then, that the best rule in this case would be that he should have title to the one to which he first perfected title.

The rule established by the instructions above named, as fourth, fifth and sixth, is different. When instructions conflict, and two rules are laid down, upon either of which a verdict could be founded, this is error which will reverse a judgment. *People* v. *Campbell*, 30 Cal. 312; *People* v. *Anderson*, 44 Cal. 65; *Brown* v. *McAllister*, 38 Cal. 573; *Chester* v. *Con. P. Ditch Co.*, 53 Cal. 56.

I come now to the materiality of these errors, wherein the jury was instructed that, if the defendant made two discoveries on the same vein, he had a right to make two locations on that vein.

First. As I have said, there is no evidence to support this instruction; and second, it is not law. If the evidence shows that there was but one discovery, as I think it does, then it becomes material to inquire whether or not a party can make two locations from the same discovery hole on the same lode, although said locations are made only from the center of said discovery. In fact, I think when it is patent that both discoveries are on the same lode, one person is entitled to locate but one claim. The law of congress is silent upon this point. The mining law of 1872, it is evident, did not provide how many claims one man could locate. See R. S. of U. S. sec. 2320. This was left to the local rules and customs. See R. S. of U. S. sec. 2324.

Miners are left to make rules in regard to the location of

mines.   Under the mining law of 1872, a person was still allowed to occupy and explore and possess mining ground under local customs, rules and laws, as before.   The provision of the act of congress of 1872, which, it is claimed, provides for the number of feet a person can locate, is as follows:   "A mining claim located after the 10th day of May, 1872, whether located by one or more persons, may equal but shall not exceed one thousand five hundred feet in length."  Eliminate the words, "whether located by one or more persons," and we have: "A mining claim located after the 10th day of May, 1872, may equal but shall not exceed  one thousand five hundred feet in length."   This is certainly a limitation of a mining claim.  It provides how long a mining claim may be.   The clause above eliminated, when added to it, certainly does not make it anything else.   With these added, it only provides that a mining claim, whether located by one or more persons, may equal but shall not exceed more than one thousand five hundred feet.   This cannot be tortured into a grant to a person to locate any number of feet.   It only defines the extent of a mining claim.   It does not say one person may locate one or more than one of these claims, or that any number of persons can locate one or more of these claims.   With a very little trouble I think we can see how congress came to enact this clause.   The manner of locating mining claims that usually prevailed in Nevada and California was what is usually called joint locations, and the notice of location usually commenced, "We, the undersigned, locate —— feet on this lode," or, "We, the undersigned, claim —— claims on this lode, of two hundred feet each," etc.

The number of feet thus located, whether the same was one hundred feet or three thousand feet, was termed a mining claim.   The mining act of 1866 (see Brightly's Dig. of U. S. Laws, vol. 2, p. 400, sec. 77) evidently refers to this mode of location, when it provides "That no person may make more than one location on the same

lode, and not more than three thousand feet shall be taken in any one claim by any association of persons."

From the mining work entitled "Leading Cases on Mines, Minerals and Mining Water Rights," by Blanchard, p. 118, we find that under this act of congress of 1866 the custom grew up for one person to use the names of some fourteen of his friends in locating the same in this manner, locating three thousand feet on a vein, with the understanding that these friends were to deed to him the amounts thus located in their names; and thus the locator became the owner of three thousand feet instead of four hundred feet as provided by the local laws. The act of congress, then, was intended to curtail the amount of a lode any one man could monopolize instead of being a grant of a monopoly. The clause provides that, before any location is made of a mining claim, a vein must be discovered in the ground sought to be located. This is a condition precedent to the making of a location, but it is not provided that whoever discovers a mineral-bearing vein upon the public domain can locate a claim. There are no laws in Montana that provide whether or not a person can locate one or more claims on the same mineral-bearing vein. There were none when this claim was located. The law that provided the number of feet a person could locate was repealed by act of legislative assembly of May 8, 1873. See Laws of Mont. 1873, p. 83. The law of 1876 did not provide for the number of claims a person could locate on the same vein. There were no written customs or rules in Summit Valley Mining District as to the number of claims one person could locate upon the same mineral-bearing vein. If any custom existed there upon this point, it was an unwritten one. None of any character was shown in this case. If there was a custom upon this subject it must be reasonable. *King* v. *Edwards*, 1 Mont. 235; *Harvey* v. *Ryan*, 42 Cal. 628; Blanchard & Weeks' Leading Cases on Mines, pp. 98, 99; Cooley's Blackstone, book 1, p. 77. Would

it be a reasonable custom to allow a man to locate any number of claims on the same vein?

By the congressional law of 1872, claims were limited to two hundred feet, and none but a discoverer could locate more than one claim. He could locate two. This was also the law of this territory up to 1873. See Laws of Mont. 1864, p. 327. This was the general rule adopted by miners in the western mining districts. See Leading Cases on Mines, etc., by Blanchard, pp. 116–118. In the mining act of congress of 1866. See Brightly Digest, vol. 2, p. 400.

A custom that allows more than one claim of fifteen hundred feet on the same vein, considering the former rules, laws and customs, ought to be considered unreasonable. The same rule ought to prevail under such circumstances — that is, where there is no rule or custom, or where the custom is unreasonable — as prevailed when a person located a claim outside of any mining district, or where there was no local law. In such cases his location should be reasonable, and not savor of monopoly. *Table Mountain Tunnel Co.* v. *Stranahan,* 20 Cal. 211.

Now, considering what has been said as to the amount any one could locate before 1875, the time of this location, and there can be no doubt but that the power to locate any number of claims on the same lead does savor of monopoly. Under such a rule a person could locate a lode like the Comstock, or all the mines in a district like Leadville.

The acting land commissioner in 1873 decided that there was no law of congress which forbade a man to locate more than one claim on the same lode; and hence he could locate as many claims as he pleased on the same lode, unless he was prohibited by the local law. This, I believe, has been followed by subsequent land commissioners.

The first position was correct. The last does not follow, however. If congress has not prescribed how many

claims a man may locate, or has not legislated upon the subject at all, it does not follow that one person can locate as many claims on the same vein as he pleases. At the time of the mineral act of 1872, everywhere in the western mining region there was a limitation upon the number of claims any one man could locate. When the miners made rules for their district they limited it. Where locations were by legislative enactments, they limited them. See authorities before cited. The legislation of congress, then, should be considered as enacted with these rules and legislative enactments in view. If congress has said nothing upon this subject of how many claims a man can locate, then nothing can be inferred from this. In grants by the public nothing passes by implication. If a grant is silent about a power it does not exist. The *Case of Binghamton Bridge,* 3 Wall. 75; *Mills* v. *St. Clair Co.* 8 How. (U. S.) 581; *Rice* v. *T. Min. & N. W. R. R.* 1 Black, 383; Sedgwick on Stat. & Con. Law, 291, 387–9.

The locator of mines must occupy them in accordance with the local rules, customs and laws. See R. S. U. S. The miners have the right to make rules and customs as to the location and forfeiture of mining claims. R. S. U. S. sec. 2324.

From these provisions of the congressional mineral act of 1872, it is evident that it was the intention of congress to turn this subject, of how many claims a person can locate, over to the local authorities, whether the same were the rules and customs of the mining district or the local legislature. In this case these were silent. No provision on the subject was made.

We are left, then, to the general custom that prevailed throughout the western mining regions, that a person could locate where there was no rule as to the amount he could take, but his location must not savor of monopoly. And in considering what would be classed as monopoly, the general rules and customs existing throughout the

country could be considered. See *Table Mountain Tunnel Co.* v. *Stranahan,* 20 Cal. 211. This was everywhere two hundred feet, unless a person was a discoverer, and then four hundred, or two claims of two hundred feet.

In regard to agricultural lands, the congress of the United States has guarded against monopoly. If it has not done so in regard to mines, it is because it was supposed that the same class of legislation that had before prevailed in the mining regions of the west would be continued. It is now left to the courts to say whether they will sanction locations that in principle amount to monopolies. The question in my opinion is before the courts, and it is for them to say.

In this case the location was made from one discovery hole or shaft. Both locations were called the Sankie. Now if Ford could not locate two claims from the same discovery hole on the same lode, I do not see how in principle he can go ten or a hundred feet away from that discovery and make another location on the same lode. Is not this as much of a monopoly as the former location? Both locations are the same in principle.

Thos. L. Napton, for respondents.

I shall attempt to reply to the points made by the attorney for appellant in the order in which he has presented them to this court.

1. The declaratory statement of the Sankie East lode claim is objected to because the original was not introduced, but a certified copy, no proof of the loss of the original having been made. Sec. 394, p. 490, Revised Statutes of Montana, 1879, says such certified copies shall be *prima facie* evidence in *all* cases. The certified copy of the declaratory statement is certainly admissible under the section cited above; and section 206, p. 442, of statute of 1879, refers to conveyances of realty only, and not to such declaratory statement, and is a law as general in regard to conveyances of realty as the section herein first

referred to. Besides, this section is a special law, saying what shall be *prima facie* evidence; and the two statutes, being *pari materia,* should be so construed as to give effect to both. See *Thomas* v. *Smith,* 1 Mont. 1.

The deed from Ford to Cameron (although I think admissible as a certified copy) cannot be a ground for reversal of this case, for the reason that even the original deed, or a certified copy, could not affect the judgment. One co-tenant can defend for all his other co-tenants; so in this case Clark, defendant, could defeat the suit of plaintiff, whether Ford or Cameron had the legal title. See Freeman on Co-tenancy and Partition, p. —, and other authorities there cited.

The California authorities cited by appellant's counsel are in no manner applicable to the admissibility of the certified copy of the declaratory statement of defendants' grantor. The defendants were in actual possession when this action was commenced, and the copy would be admissible to show the extent of their claim, the record thereof, and date of record; and as we cannot review the testimony or the sufficiency thereof in a statement on appeal, this court cannot reverse the case. This objection, if it could be reviewed at all, could only be on motion for a new trial, and we cannot tell but that the original was afterward introduced, because this statement on appeal does not *purport* to contain *all* the evidence in the case upon any one given point.

The second error relied upon by appellants is to instructions four, five, seven and eight. This objection and assignment of error seems to be general, and an appellate court will not consider the same, for the reason that counsel for appellants did not cite or call the attention of the court below to any particular error in either of said instructions. See *Griswold* v. *Bolley,* 1 Mont. 549; *McKinney* v. *Powers,* 2 Mont. 466; 7 Wall. (U. S.) 39; *Johnston* v. *Jones,* 1 Black, 209; *Rogers* v. *Marshal,* 1 Wall. 645–654; *Harvey* v. *Tyler,* 2 Wall. 328; Thomp-

son on Charging a Jury, p. 158, sec. 117; *Spring Co.* v. *Edgar,* 99 U. S. 658, 659.

The *nisi prius* court, then, had no opportunity to correct the error if there was any.

This is an action of ejectment, and the plaintiff must recover, if at all, upon the strength of his own title, and he admits in his pleadings and affirmatively alleges that defendants were in actual possession of the ground in controversy at the date of the commencement of this action.  The burden of proving a valid title as against one in the actual possession rests upon the plaintiff; and if any one had to defeat the location of Dr. Ford by proving he had made a double location from the same discovery, it was the plaintiff.  The plaintiff first proves his location.  The defendants then proved a prior location by their grantor, Dr. Ford; then it would devolve upon plaintiff, in rebuttal, to show that Ford's location was void by reason of making two from the same discovery hole, and to show which one was first.  This matter may have been peculiarly within the knowledge of Dr. Ford, but he is dead, and the plaintiff had the same chance at his testimony that defendants had; and besides this, every presumption would be that he had located in accordance with law.  If this double location was peculiarly within the knowledge of defendants, plaintiff could have made witnesses of these defendants in his own behalf.

2d. These instructions cannot be reversed on account of there being no testimony to support them, for the reason that the attorneys do not state nor agree that *what* testimony was included in the statement on appeal was *all* the testimony in the case applicable to the instructions excepted to; and further, there is testimony showing actual work and representation without objection on the part of counsel for plaintiff.  See testimony of Thompson, Venor and Boardman, pp. 15, 17 and 19 of transcript.

3d. Again, this evidence and these instructions are correct for the reason that the testimony shows the good faith of defendants, and that they nor their grantors have ever *abandoned* the ground in dispute, and an *abandonment*, as distinguished from a *forfeiture*, can be proved under the general issue, as presented by the proceedings in this case, and the instructions are applicable to the testimony regardless of any question of forfeiture.

Again, these instructions must all be taken in connection with those given at request of plaintiff; and in plaintiff's instructions one, two and three, the court defines what is the valid location of a mining claim and what an invalid one is; and further (see fourth instruction), that two contiguous claims of one thousand five hundred feet each cannot be located from or discovered in the same hole. The jury must have found either that plaintiff had not complied with the law and had no title, or, on the other hand, that Dr. Ford had not taken one hole as the basis of his contiguous claims of one thousand five hundred feet each. The instruction certainly gives the plaintiff every technical legal right he may have had, and as we cannot review the insufficiency of the evidence except on a motion for a new trial, we see no application of the argument of counsel for appellant. Counsel continuously supports his argument by saying " there was no evidence" of such and such facts. How does this court know there was not ?

Further, after instructing the jury as to the law governing the acquisition of title to a quartz claim at the request of counsel for appellant, what would be the necessity of repeating the same at the request of defendants or of his own motion ? All these instructions, in contemplation of law, come from the court as a whole, and must be so considered by the appellate court.

Further, instruction 2, p. 75 of transcript, is correct, and is supported by what little testimony is brought up; and we cannot say that Dr. Ford did not make a location

in 1875, for that would be discussing the insufficiency of the evidence.

Further, as to instruction 3, p. 75 of transcript, counsel for appellants seems to place a wrong construction upon it. This instruction is drawn in connection with the testimony of Thompson, Venor and Boardman, and only told the jury that it must be unoccupied mineral land of the United States before the plaintiff could initiate a title or receive a grant. See *Atherton* v. *Fowler*, 96 U. S. 513; *Belk* v. *Meagher et al.* (No. 69) U. S. Court, October, 1881.

The foregoing authorities not only decide this point, but the latter, I think, goes further, and compels a party, when he makes a relocation, to allege and prove the ground was open to a grant from the government. It is evident that it was a relocation by plaintiff, because the ground was in the actual possession of defendants, with one shaft fifty-five feet deep, and others of lesser depth, and plaintiff made his discovery by looking down one of these shafts, and while defendants were at work.

The counsel for plaintiff seems to have waived in argument any objection to the *affidavit* to defendants' declaratory statement; plaintiff's is the same as defendants.

Title to a quartz claim is *perfected* when a discovery is made and ground staked. This is a perfect title for twenty days; then he records his declaratory statement, and it is a perfect title for a year, and then is perfect for another year, and so on *ad infinitum*, if he represents according to law, or until he procures a patent.

From the tenth page of brief of counsel for appellant to its close, I might confess it all; he has only argued in favor of an instruction given by the *nisi prius* court at the request of counsel for appellant. What is the use of detailing a lot of personal experience and personal knowledge to show that the legislation of congress was supposed to be against monopoly, when the court gave for appellant the following instruction, and to which defend-

ants did not object. The instruction is as follows (see p. 71 of transcript): "No person can locate two contiguous claims of fifteen hundred feet each on the same lode, when they are located on from the same discovery shaft or hole."

Does this instruction savor of monopoly? And why should the counsel for appellant take eight pages of his brief to prove that the instruction given by the court at his request was good law, and to which defendants' attorney did not object, and have had no reason to appeal from by reason of any objection or exception? Rules and customs of mining districts are never taken judicial notice of, but must be proved on the trial in order to acquire a right by virtue of their existence. There are none offered in evidence or proved in this case, as appears from the statement on appeal; and certainly an appellate court will not take the *dicta* and varied experience of counsel for appellant as a substitute for the testimony that *might* have been introduced.

Admitting all this for the purpose of argument, I contend that the legislation of congress has been in reference to mines particularly, and all other subjects since 1865, in favor of monopolies.

Placer mines, according to counsel for appellant, were from one to two hundred feet up and down a gulch, and extended from rim rock to rim rock on either side. On July 9, 1870, an act was passed and approved granting to a placer miner one hundred and sixty acres of land as a placer mine in a gulch or elsewhere, if he took it up in ten-acre lots. See sec. 12, ch. 225, R. S. U. S.

Does this savor of monopoly? Or does it show that there has been a change from the rules of minors in favor of monopolies? Again, in reference to quartz claims. In ch. 262, sec. 4, of the Revised Statutes of the United States, enacted in 1866, congress limited, in *express* words, the location by one party of a quartz lode to two hundred feet, except in case the party was the discoverer, and

then to four hundred feet. In 1872 the act under which this claim was located by plaintiff and defendants, the absolute right to one thousand five hundred feet is granted upon compliance with the law, and there is no prohibition from making more than one location on the same lode, or from making two locations from the same discovery. The law says, in substance, that a party discovering a lead may locate in *one* location a parallelogram of land one thousand five hundred feet in length, and six hundred feet in width. But the law nowhere prohibits a second location, but, on the contrary, leaves section 1 of said act open to the energy and industry of the discoverer, and allows him to locate upon the same lode another one thousand five hundred feet by six hundred (or on any other lead), for the reason that it is thrown open to free exploration and possession, and is unoccupied mineral land of the United States. To prohibit a man from making a second location on the same lead, by the same rule he should be prohibited from discovering another lead and making a location on it. According to the argument of counsel for appellant, this would be a monopoly. Congress certainly intended by the act of 1872, in reference to mines, to reward industry and knowledge beyond what was given in the act of 1866, or they would have inserted some restriction or limitation on the ability or perseverance of the miner. Why prohibit the man who makes the discovery, and give the loafer the benefit of his discovery ? Let the discoverer take the lead so far as he can find it, would be the policy to reward true enterprise, and not save his intelligence and industry to be frittered away to scattered stragglers behind, and reward them for something they had never done. The rule is different in reference to homesteads and pre-emptions from what it should be as regards mines. Mines fail. Homesteads and pre-emptions do not, in any portion of this country.

In conclusion I would say that every instruction given

was all that plaintiff could possibly ask, and those for the defendants do not conflict with them. The jury must have found, by this general verdict, that plaintiff made no location, or, if he did, that defendants' grantor, Dr. Ford, had made a *prior* valid location, and defendants could hold the ground according to the familiar maxim, " *Qui prior est tempore, potior est jure.*"

### REPLY OF APPELLANT.

The same statute existed in California as to certified copies of records as the one cited by respondents, when the decisions cited in appellant's brief were made. See Woods' Digest, p. 000. The decisions cited in appellant's brief were made when that statute existed.

The judgment in this court was in favor of Cameron and Clark. If Cameron had no title, then there is error in the judgment, even if Clark could defend the action in his own right for his interest. Cameron had no right to a judgment against McKinstry when he failed to show title.

The authorities cited from California were applicable. They were made under a statute the same as that cited by respondents. See Woods' Digest, p. 000.

The testimony set out in this case does purport to be all the evidence in the case material to the points raised. In fact, it purports to be the evidence in the case. It would present a curious state of a case if a party who has agreed to a statement could have the mental reservation that this is all as far as it goes. This must be taken as the evidence in the case — all of it. It was not necessary under the Practice Act to call attention to the particular error in each instruction. The exceptions were sufficient. *McCreery* v. *Everding,* 44 Cal. 246; *Shea* v. *P. B. V. R. R. Co.* id. 414.

The cases cited from Montana decisions are not in point. Those cited from United States decisions depend

upon a rule of the supreme court of the United States. See Charging Jury, by Thompson, p. 157, sec. 116.

As far as the evidence went as to location of defendants, it showed that Dr. Ford did not locate according to law. See evidence of Parks and of Porter, pages 00, 00 of transcript. There was no evidence to show that Ford ever did locate the ground according to law. If the possession of mining ground raises the presumption that it was located according to law, all that one party in a mining suit has to do is to show his possession, and then the contesting party must show not only that he located according to law, but that his opponent did not. The burden of proof is on him not only to prove his own title, but to prove that his opponent never had any, also, before his opponent can be called upon to show any title or location.

Again. I must call the attention of the court to the fact that the evidence in the record does purport to be the evidence in the case, and not a portion of it. Respondents were allowed to show actual work on this ground, in order that they might show possession of the same. But nowhere were they allowed to show representation. If so, it was immaterial evidence, and should not have been the basis of instructions. There was no such issue in the case, and instructions should be confined to the issues. See Proffat on Jury Trials, sec. 313, wherein he says this is a leading, cardinal rule.

Again. There is nothing to show that plaintiffs ever claimed that they did or did not abandon the ground. There was no issue of this kind.

There are no instructions that in terms, as given for plaintiff, define what was a legal location or a valid location. If the fact that there is a shaft on a piece of ground shows that the location of the same is a relocation, then we have arrived at a peculiar era of legal presumptions.

Title to a quartz claim is not made until a declaratory

statement is recorded and in it the ground is identified as provided by law.   The acts constituting location have not until then been complied with.

Counsel for plaintiff, by inadvertence, in his opening brief, did not claim affidavit to declaratory statement of Ford was defective.   If the court is going to hold that such affidavits render a statement defective, he would like the benefit of the same for his client.   The affidavit is not as required by law, although the form in which it was made may have been a common error.

It is not true that in placer claims the law favors monopoly.   In an organized mining district no one can hold more than the local laws allow.   Whether a man can locate ten acres outside of a mining district has not yet been tested by the decisions.

CONGER, J.   This is an action of ejectment brought to recover the possession of a certain mining claim, described as the Themis lode claim, the same being a quartz mining claim fifteen hundred feet in length by six hundred feet in width along said lode, situate in Summit Valley Mining District, Deer Lodge county, Montana territory, and also for damages in the sum of $100 and costs.

Plaintiff avers that on the 2d day of March, 1880, he was the owner of and entitled to the possession of said lode, and that afterwards, to wit, on or about the 3d day of March, 1880, and while plaintiff was so seized and possessed and entitled to the possession, the defendants entered upon the same and did oust the plaintiff from possession, and maintain and hold the same.   He therefore asks judgment for possession and his damages and costs in the case.

Defendants, in answer, deny the allegations in plaintiff's complaint, and for further answer allege: that since the 27th day of April, 1875, they and their predecessors in interest are and have been the owners of and in the possession of all the premises described and claimed by

the plaintiff, said premises being claimed and possessed as the Sankie lode claim.

In reply plaintiff denies that defendants, or either of them, are now or have been the owners of said premises under the name of the Sankie lode claim since April 27, 1875, or otherwise, and deny that they are or have been entitled to the possession of the premises.

Upon the trial of the cause, the jury found in their verdict for the defendants, upon which verdict the court ordered judgment for the defendants with costs.

From which judgment of the court below plaintiff appeals to this court and assigns the following errors of law:

*First.* The court erred in admitting certified copy of the declaratory statement of location of Sankie lode, as is specified in plaintiff's bill of exceptions No. 1.

*Second.* Admitting certified copy of deed from Ford to Cameron as specified in bill No. 2.

*Third.* Error in giving instructions as specified in plaintiff's bill No. 3.

As to the first error assigned, viz., admitting in evidence a certified copy of declaratory statement of location of Sankie lode, without proof of the loss of the original, section 873, chapter 45, article 1, provides that any person hereafter discovering any mining claim, etc., shall within twenty days thereafter make and file for record in the office of the recorder of the county in which said discovery is made a declaratory statement thereof in writing, on oath, before some person authorized by law to administer oaths, describing such claim in the manner provided by the laws of the United States.

The law requires the discoverer to make and file, in the office of the recorder, his declaratory statement to be by him recorded; and section 384, article 4, fifth division of the general laws, is as follows, to wit: "Copies of all papers filed in the office of the recorder of deeds, and transcripts from the books of record kept therein, certi-

fied by him under the seal of his office, shall be *prima facie* evidence in all cases:"

And section 609, Civil Code: "There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases. . . . Paragraph 4. When the original has been recorded and a certified copy is made evidence by this code or *other statute.*" And in further explanation, the second clause of the fifth subdivision provides that, in the cases mentioned in subdivisions 3 and 4, a copy of the original or a certified copy must be produced.

Taking all these statutes together, the correct conclusion is, that either the one or the other is competent evidence to offer. And it was not error in the court below to admit the certified copy of location notice in evidence without first accounting for the absence of the original.

The foregoing is also conclusive as to the second specification of error.

The third assignment of error specified and relied on by the plaintiff is contained in bill of exceptions marked No. 3, and are exceptions to the following instructions offered by the defendants and given by the court, and numbered 1, 2 and 3.

Upon examination of the transcript it appears that nine instructions were given by the court and indorsed as defendants' instructions, but they are not numbered, except that as to the second there is a figure 2, and at the beginning of the third there is a figure 3. No numbering appears on the others.

There then appears in the transcript ten other instructions, marked given, and indorsed as plaintiff's instructions, but they are not numbered.

The law requires in the sixth subdivision of section 253, Code of Civil Procedure, that: "When the argument of the case is concluded, the court shall give such instructions to the jury as may be necessary, which in-

structions shall be in writing and be numbered and signed by the judge."

But this deficiency is not assigned as error and seems to have been no injury to the appellant, who has recited in his bill of exceptions the particular instructions to which he at the time excepted. It is not, therefore, within the province of this court to consider in this cause this irregularity of the transcript.

The court instructed the jury: "The defendants in this cause have denied all the material allegations in plaintiff's complaint, and this puts upon him, the plaintiff, the burden of proving every material allegation in his complaint, before he can recover; and if the jury do not find from the evidence in the cause, and by a preponderance thereof, that the plaintiff made a discovery of a vein of quartz, and staked it and recorded it as required by law, then you should find your verdict for the defendants." To which plaintiff excepted.

"2. If you find that Ford located this ground in the manner required by law in 1875, and that it has been represented ever since, you must find for the defendants." To which plaintiff excepted.

"3. The jury must find that the ground plaintiff located was subject to location at the time he entered upon and located the same, or the verdict must be for the defendants." To which plaintiff excepted.

"If you find that Ford discovered a ledge on the ground in controversy and made two distinct locations, you are instructed that he had a right to make one location, and that the first location, if regularly and lawfully made, was good and valid, notwithstanding he may, immediately after making the first, have attempted to make the second. If, therefore, you find that one valid location was made, and that he and his successors, through whom defendants claim, have represented the same ever since, by doing the requisite amount of work thereon, such claim was not subject to relocation by plaintiffs,

provided you find that the ground in question was within that one of the two located which was validly located and represented by the defendants, and which was the one of the two they were entitled to hold." To the giving of each one of the two foregoing instructions plaintiff excepted.

"If plaintiff recovers it must be on the strength of his own title; and if one of the Sankie claims was not subject to relocation at the time plaintiff's location was made, the burden of proof was on the plaintiff to show which of the two Sankie locations was invalid, and what part of said ground was subject to relocation, if defendants were in possession of the said Sankie claims." To the giving of which plaintiff excepted.

From an examination of the foregoing instructions and the evidence contained in the transcript, it is apparent that the trial proceeded and the court instructed the jury upon the basis that defendants had located two claims, called Sankie East and Sankie West, from the same discovery. And the court instructed the jury, that: " Although two locations cannot be made from one single discovery, yet if Anson Ford discovered the vein in two distinct places, he had a right to make a location for each of such discoveries."

It will be seen that by one of the instructions the jury were told that, if plaintiff recovers, it must be on the strength of his own title. So far, this is the law. But when they were told that if one of the Sankie claims was not subject to relocation at the time plaintiff's location was made, the burden of proof is on the plaintiff to show which of the two Sankie locations was invalid, and what part of said ground was subject to relocation, it is evident a burden was laid on the plaintiff, which, by no construction of law or reasoning of logic, he was called on to bear.

But it is contended that this error is cured by the rest of the instruction, viz.: "If defendants were in posses-

sion of said Sankie claims," and the following instruc-
tion, defining possession, which is as follows:    "By
possession of a mining claim, actual personal presence
on the ground is not meant.  But if a party has discov-
ered a ledge with a well defined wall rock within the
limits of such claim, has posted and recorded his notice
as required by law, marked its boundaries by placing suf-
ficient stakes at the corners of his claim, so that such
claim can be readily identified thereby, and then per-
formed the amount of work thereon required by law to
hold the same, these acts constitute possession of the
claim."

This instruction is correct as to possession, but it goes
far beyond that; and if defendants had performed the
requirements of the instruction, they were not only in
possession, but had the right to possession.

But the mere stating of a correct legal proposition to
a jury does by no means shift the burden of proving the
facts necessary to form the basis of the instruction
given.

Counsel for respondents (defendants heretofore) con-
tends:    "That this is an action of ejectment, and the
plaintiff must recover, if at all, upon the strength of his
own title, and he (plaintiff) admits in his pleadings, and
affirmatively alleges, that defendants were in actual pos-
session of the ground at the date of the commencement
of this action."

The supreme court of the United States, in the case of
*Belk* v. *Meagher et al.*, say:  " The right to the possession
comes only from a valid location; consequently, if there
is no location, there can be no possession under it.  Loca-
tion does not necessarily follow from possession, but pos-
session from location."

Again, counsel argue that plaintiff first proved his loca-
tion.  The defendants then proved a prior location by
their grantor, Dr. Ford.  Then it would devolve upon
plaintiff, in rebuttal, to show that Ford's location was

void by reason of making two from the same discovery hole, and to show which one was first.

This reasoning is in accord with the instructions above, and they were undoubtedly given on the same view of the law.

When the plaintiff has proved his location, and the defendants have proved a prior valid location, that is doubtless sufficient to defeat plaintiff's right; but that is not the case. Defendants claim two locations, one of which, it is assumed, may be invalid, and the jury were told the burden of proof was on the plaintiff to show which of the two was invalid, or, as counsel for respondents says in his brief, "to show which was first."

A simple analysis and statement is sufficient to show the error of law. These instructions would mislead the jury; for when they were told the burden of proving which of the two Sankie claims was invalid, if defendants were in possession as before stated, they would naturally be led to the conclusion that the defendants had performed their entire duty, if the plaintiff did not, by a preponderance of the evidence, prove to the contrary.

It is said these instructions cannot be reversed on account of there being no testimony to support them; that all the testimony in the case applicable to the instructions is not stated.

Section 282 of the Civil Code is as follows: "The objection shall be stated with so much of the evidence or other matter as is necessary to explain it, but no more." This has been done in this case.

It is true, as alleged by counsel, that the instructions must all be taken in connection, one with another. They are not the plaintiff's instructions in part, and the defendants' instructions in part, but they are, as a whole, the instructions of the court to the jury. They should so be delivered by the court, and be so received by the jury, and by this court be so examined and passed upon.

This has been done, and a careful examination of them

as a whole does not in our opinion relieve them from the objection that they were not in accord with law, and tend to mislead the jury.

It is said by counsel, "that the objections and assignments of error as to the instructions seem to be general, and an appellate court will not consider the same, for the reason that counsel for appellant did not cite or call the attention of the court below to any particular error in either of said instructions;" and cites as authority therefor, *Griswold* v. *Boley*, 1 Mont. 549, and *McKinney* v. *Powers*, 2 Mont. 466.

In *Griswold* v. *Boley* the court says: "One other specification is as follows: The court erred in instructing the jury for the plaintiff, as they were instructed by the court at the time." This specification is of the like character to the one already considered, and for like reasons cannot claim the attention of the court; and for another reason, the instructions given on behalf of the plaintiff were not excepted to at the time, and for all that appears went to the jury without objection.

We can take no notice of exceptions not taken at the proper time and duly saved; and if this exception had been taken at the time the instructions were given, and this fact had duly appeared in the record, the exception is of such a general character that it does not meet the requirements of the code, which provides that the statement shall specify the particular errors upon which the party will rely.

Exceptions to the charge to the jury ought to point out the specific portions excepted to, and to be made at the time of the trial, in order that the judge may have an opportunity, before the jury retires, to correct any error he may have fallen into in the hurry and perplexities of the trial. *Hicks* v. *Coleman*, 25 Cal. 146.

And no exceptions to the instructions to the jury ought to be regarded unless the same are made and presented to the court before the same are finally submitted to the jury.

In *McKinney* v. *Powers,* 2 Mont. 466, the same doctrine is maintained, and the case of *Griswold* v. *Boley* affirmed. The court says: "The alleged errors complained of in this action arise upon the instructions of the court to the jury. The record shows that no exceptions were taken to the instructions as given. We have repeatedly held that this court will not consider the correctness or incorrectness of instructions to the jury, unless exceptions were properly taken and saved in the proper time. See *Griswold* v. *Boley.* Objections to instructions should be specifically pointed out before the case is finally submitted to the jury. The court below should have an opportunity to correct any alleged errors in the instructions, and this can only be done when such alleged errors are designated before the case goes to the jury. Obviously, this opportunity was not presented to the court in this case. The instructions went to the jury without objection, and it is now too late to assign errors upon such instructions, no exceptions having been taken at the proper time."

Section 279, Code of Civil Procedure, provides: " An exception is an objection taken at the trial to a decision upon a matter of law." And section 281 provides further: " The point of the exception shall be particularly stated, except as provided in relation to instructions." Subdivision 5 of section 523 of Civil Code provides: " When the evidence is concluded, and either party desires special instructions to be given to the jury, such instructions shall be reduced to writing and signed by the party, or his attorney, asking the same, and delivered to the court." Sixth. " When the argument of the cause is concluded the court shall give such instructions to the jury as may be necessary, which instructions shall be in writing, and be numbered and signed by the judge." Seventh. " When either party asks special instructions to be given to the jury, the court shall either give such instruction as requested, or positively refuse to do so,

or give the instruction with a modification, and shall mark or indorse upon each instruction so offered, in such manner that it shall distinctly appear what instructions were given in whole or in part, and in like manner those refused, so that either party may except to the instructions as given, or refused, or modified, or to the modification.

" If any party to the trial desires to except to any instruction given by the court, or to the refusal of the court to give any instruction asked for, or any modification thereof, he shall reduce such exception to writing, and file the same with the clerk before the cause is submitted to the jury."

The law requires the judge to indicate, by numbering and marking, the instructions offered to him, so that it shall distinctly appear what he gives, refuses and modifies. It also requires the parties to a suit desiring to except to this action of the court to specify the same in writing as to each instruction, and the objection to the same, so that the court may know whether the objection exists to the modification, or the giving, or the refusal of the court to give, the instruction. A general objection to each and all of the instructions, that they are not law, or are misleading to the jury, is not enough.

This is the doctrine of the cases cited and is affirmed in this cause. The objections to the instructions in this case were taken severally and were sufficient.

For the errors above stated this cause is reversed and remanded for a new trial.

*Judgment reversed.*